# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Julio Burgos-Torres

### DEFENDANTS
Matthew Hurd (DOJ), Chrstina Troiani (DOJ) Adam Siple (ATF) David Hardy (FBI)

**(b)** County of Residence of First Listed Plaintiff: Hartford
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Washington DC
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Brown, Koch Garg & Brown, 8 West Main Street, Suite 2-10, Niantic, CT 06357 (860) 452-6860

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [x] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 550 Civil Rights / [ ] 555 Prison Condition / [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Freedom of Information Act, 5 U.S.C. 552

Brief description of cause:
Plaintiff challenges the failure of the U.S. Government defendants to respond adequately to FOIA requests.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE: 01/05/2023

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JULIO BURGOS-TORRES**<br><br>**Plaintiff,**<br><br>v.<br><br>**MATTHEW HURD et. al.**<br><br>**Defendants.** | CIV ACTION NO.:<br><br><br>January 5, 2023 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT

### I.     Introduction

1.     This action arises out of violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et. seq*. Plaintiff Julio Burgos-Torres challenges the failure of defendants Federal Bureau of Investigation ("FBI"), Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Drug Enforcement Administration ("DEA") to respond adequately to his FOIA requests and appeals in the manner and within the time limits mandated by FOIA. The requested documents relate to a Joint State-Federal Task Force investigation into a group known as the "Carolina Boys" operating a criminal enterprise in Connecticut during the early 2000s. The Carolina Boys were a small group of associates originating from the city of Carolina in Puerto Rico. The group was known to deal in narcotics and was connected to a number of violent crimes. Relevant to the plaintiff, the plaintiff was arrested and charged for a homicide that occurred in Waterbury, Connecticut in 2005. At the plaintiff's state criminal trial, a key prosecution witness testified that the plaintiff was a member of this Carolina Boys group, and that the homicide was related to a dispute over drug territory. The state prosecution's

1

witnesses, and the victim, were all allegedly affiliated with the Latin Kings gang. The testimony at the trial related to the plaintiff's alleged membership with the Carolina Boys gang was extremely prejudicial, and was relied upon by the prosecutor during closing arguments. The plaintiff has long insisted that he was not, is not, and never was a member of the Carolina Boys group. He has utilized a number of state court post-conviction legal remedies to challenge the use of false testimony at his criminal trial. Several years after his conviction and the resolution of the plaintiff's direct appeal, the plaintiff discovered for the very first time that the State's Attorney's office that prosecuted the plaintiff was heavily involved in this Joint State-Federal Task Force into the Carolina Boys, and that the very prosecutor from the plaintiff's criminal trial was likely a central member of that investigative team, and that he likely had access to extensive information about the group's membership and activities that would reflect that the plaintiff was never associated with this group. The plaintiff has made numerous requests for documentation in the possession of these various government agencies that would detail the information developed in this investigation. However, the plaintiff has continuously been provided only heavily redacted, and therefore unusable, records from these investigations. Direct access to these materials, at least by the plaintiff's counsel, is absolutely necessary for the plaintiff to meaningfully challenge the constitutional infirmity in his conviction: the due process violation that resulted from the trial prosecutor's knowing use of false testimony at the petitioner's criminal trial. The plaintiff prays that this Court assist the plaintiff in vindicating his constitutional rights. Plaintiff seeks injunctive relief directing defendants to provide all requested materials, in unredacted form, to plaintiff's counsel promptly. The plaintiff further seeks declaratory relief that defendants' actions violated FOIA. The plaintiff seeks also his costs and fees in bringing this action as provided by FOIA, 5 U.S.C. § 552(a)(4)(E).

**II. JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B).

3. Venue rests properly in this Court pursuant to 5 U.S.C. § 552(a)(4)(B).

4. Declaratory relief is appropriate under 28 U.SC. § 2202.

5. Injunctive relief is appropriate under 28 U.S.C. § 2202

6. Fees and costs are appropriate pursuant to 5 U.S.C. § 55(a)(4)(E).

**III.   Parties**

7. Plaintiff Julio Burgos-Torres is a resident of Suffield, Connecticut, as he currently resides at the MacDougall Correctional Institution pursuant to a 65 year sentence that he is currently service for a conviction of murder and criminal possession of a firearm, in *State of Connecticut v. Julio Burgos-Torres* UWY-CR05-0342454-S.

8. Defendant Christina D. Troiani, is the Associate Chief of the Administrative Appeals Staff for the Department of Justice.

9. Defendant Matthew Hurd, is a Senior Attorney for the Office of Information Policy at the Department of Justice.

10. Defendant Adam C. Siple is the Chief of the Disclosure Division for the Department of Alcohol Tobacco and Firearms.

11. Defendant David M. Hardy is Section Chief of the Record/Information Dissemination Section of the Information Management Division of the Federal Bureau of Investigation

**IV.   Statement of Facts**

A.   The Criminal Proceedings

12. On July 20, 2005, the plaintiff was arrested and charged with the shooting death of the victim Jesus Gonzalez.

13. The criminal proceedings against the petitioner were docketed as *State of Connecticut v. Julio Burgos Torres,* CR05-0342454, in the Connecticut Superior Court in the Judicial District of Waterbury.

14. The plaintiff's case proceeded to trial in December 2006.

15. The prosecutor at the plaintiff's criminal trial was Attorney Patrick Griffin, who was then employed by the Office of the State's Attorney for the Judicial District of Waterbury.

16. On December 5, 2006, Attorney Griffin called Luis Gonzalez as a witness for the State of Connecticut, and Gonzalez testified that he was an eyewitness to the killing of the victim.

17. Luis Gonalez testified falsely that the plaintiff was a member of the "Carolina Boys" group that, according to Luis Gonzalez's testimony, controlled the drug trade in the "South Main" area of Waterbury.

18. Luis Gonzalez's testimony related to the plaintiff's alleged involvement with the Carolina Boys was used to establish motive evidence to explain the shooting, and was also highly prejudicial and harmful character evidence against the plaintiff.

19. The testimony of Luis Gonzalez related to the petitioner's alleged involvement with the Carolina Boys was false, as the petitioner was not, and never has, been affiliated with the Carolina Boys crew.

20. Unbeknownst to the petitioner at the time of the petitioner's criminal trial, defendant Griffin knew or should have known this testimony about the petitioner's alleged involvement with the Carolina Boys was false because Griffin was an integral part of joint efforts between local, state, and federal law enforcement agencies to prosecute the Carolina Boys' illegal operations, and he was therefore aware that the petitioner was never a member of the Carolina Boys organization.

21. The false testimony of Luis Gonzalez at the petitioner's criminal trial was not corrected by the defendant Griffin, and that testimony was not meaningfully impeached by the petitioner's counsel.

22. After the jury trial before *Vitale, J.*, the petitioner was convicted of murder in violation of Conn. Gen. Stat. § 53a-54a and criminal possession of a firearm in violation of Conn. Gen. Stat. § 53a-217.

23. On May 24, 2007, the court, *Vitale, J.,* sentenced the petitioner to a total effective sentence of 65 years of incarceration.

24. On April 28, 2009, in *State of Connecticut v. Julio Burgos-Torres*, AC 29896, the Appellate Court affirmed the petitioner's conviction (published at 114 Conn. App. 112 (2009)) and the Connecticut Supreme Court denied certification to appeal on September 9, 2009 (published at 293 Conn. 908 (2009)).

B. <u>Post-Conviction Litigation and FOIA Requests</u>

25. On November 11, 2007, the petitioner filed his first *pro se* petition for a writ of habeas corpus, initiating *Julio Burgos-Torres v. Warden*, TSR-CV07-4002056-S.

26. In the final amended complaint in *Julio Burgos-Torres v. Warden*, TSR-CV07-4002056-S, filed on April 7, 2011, the petitioner raised, claimed, and litigated claims related to alleged ineffective assistance of trial counsel, and did not raise any claims related to the subject of this petition for new trial.

27. On June 24, 2011, the habeas court, *Schuman, J.*, issued its memorandum of decision denying the petitioner's petition for a writ of habeas corpus.

28. On May 14, 2013, in *Julio Burgos-Torres v. Commissioner of Correction*, AC 33685, the Appellate Court dismissed the petitioner's appeal of the habeas court's denial of the petitioner's petition for a writ of habeas corpus in *Julio Burgos-Torres v. Warden*, TSR-CV07-4002056-S (published at 142 Conn. App. 627 (2013)), and the Supreme Court denied the petitioner's petition for certification to appeal on June 20, 2013 (published at (309 Conn. 909 (2013)).

29. In 2013, the petitioner filed a second *pro se* petition for a writ of habeas corpus commencing *Julio Burgos-Torres v. Warden,* TSR-CV13-4005385-S.

30. The petitioner made a number of requests to various local, state and federal law enforcement agencies related to the petitioner's alleged involvement in the Carolina Boys organization.

31. Habeas counsel also made investigative efforts to determine whether there was any basis for the defendant Griffin to know whether the petitioner was involved with the Carolina Boys organization.

C. <u>The Waterbury Police Department Discloses 74 Pages Related to the Carolina Boys</u>

32. On October 7, 2015, as the result of an FOI request to the Waterbury Police Department, the petitioner received for the first time documentary evidence reflecting the critical truth that the petitioner was unaware of at the time of the petitioner's criminal trial: that defendant Griffin had personal knowledge about the membership of the Carolina Boys group, and that at the time of the petitioner's criminal trial, Griffin possessed information that displayed that the petitioner was not a member of the Carolina Boys organization.

33. Through these materials, and other investigation, the plaintiff discovered that the Waterbury Police Department and the Waterbury Office of the State's Attorney had been members of joint state-federal task force investigating the Carolina Boys activities and membership.

34. As a result of learning this information, the plaintiff began seeking materials from federal law enforcement agencies related to this joint state-federal investigation into the Carolina Boys gang.

D. <u>The Joint State-Federal Task Force</u>

35. Upon information and belief, the Joint State-Federal Task Force that was engaged in the investigation and prosecution of the Carolina Boys Group compiled voluminous materials about the group, including the various specific criminal acts that the group had been linked to – including acts of violence – and

documented these specific criminal acts for the purpose of obtaining better insights into the group, as well as for the purposes of obtaining broad search and arrest warrants for suspected members of the group from state and federal judicial authorities.

36. Upon information and belief, the Joint State-Federal Task force compiled a list of names or a roster of the known or suspected members of the Carolina Boys Group.

37. Upon information and belief, since the Carolina Boys Group was relatively small and composed of individuals from a certain part of Puerto Rico, many of whom had family ties, the Joint State-Federal Task Force was able to compile an exhaustive list of the group.

38. Upon information and belief, this roster is within the redacted or withheld portions of the records that the plaintiff and his counsel have requested, and the plaintiff is not listed on the roster of members of the group.

39. Upon information and belief, the result of the successful law enforcement campaign to dismantle the Carolina Boys gang was that the relatively small group's membership was depleted, and the group, at least the version of it centered in Connecticut, became defunct.

E.  Federal FOIA Requests and Responses from Defendants
    Bureau of Alcohol Tobacco and Firearms

40. In March and April 2019, the plaintiff made 3 FOIA requests to the Bureau of Alcohol Tobacco and Firearms, all related to the ATF's involvement into the investigation of the "Carolina Boys" Group.

41. On March 24, 2019, the plaintiff made a FOI request to the ATF "requesting all reports and materials related to the ATF's investigation of the 'Carolina Boys' group in and around Waterbury, Connecticut in the possession of the ATF in 2005-2006.

42. On or about March 26, 2019, the plaintiff made a request to the Department of Alcohol, Tobacco, Firearms & Explosives requesting records concerning the Carolina Boys gang in the possession of the agency related to the years 2005 and 2006.

43. On April 5, 2019, the plaintiff made a FOI request to the ATF requesting "the names of all member[s] associated with the 'Carolina Boys' in 2004; know[n] to the ATF in charge of the investigation of the 'Carolina Boys' in Waterbury Connecticut in 2005-2006."

44. On April 9, 2019, Adam C. Siple, Chief, Disclosure Division, responded to the plaintiff's March 24, 2019, FOIA request, identifying that request as 2019-0759, and denying the request for the stated reason that: "You are requesting information on a third party. Disclosure of records relating to a third party is only permitted with the express authorization and written consent of the third party, proof of death of the third party, or a clear demonstration that the public interest in the disclosure outweighs the personal privacy interest of the third party. Sine☐ you have not provided any documentation that would demonstrate your right to access the records of a third party, we cannot disclose the requested information at this time. Such a disclosure would constitute a violation of the Privacy Act, 5 U.S.C. § 552a and the FOIA,' 5 U.S☐C. § 552(b)(6) and (b)(7)(C)."

45. On April 17, 2019, the plaintiff again made a request to the ATF for materials related to the Carolina Boys, including "the names of all member[s] associated with the Carolina Boys in 2005 known to the ATF in charge of the investigation of the Carolina Boys in Waterbury, Connecticut in 2005-2006" and "all reports and material related to the ATF's investigation of the 'Carolina Boys' group in and around Waterbury, Connecticut in the possession of the ATF in 2005-2006."

46. On April 23, 2019, the plaintiff wrote to Siple in response to denial of 2019-0759, requesting that the records be disclosed to him.

47. On May 30, 2019, Siple responded to the plaintiff's April 17, 2019 request, referenced as 2019-1013, and denied the request with the following justification: "You are requesting information on a third party. Disclosure of records relating to a third party is only permitted with the express authorization and written consent of the third party, proof of death of the third party, or a clear demonstration that the public interest in the disclosure outweighs the personal privacy interest of the third p☐. Since you have not provided any documentation that would demonstrate your right to access the records of a third party, we cannot disclose the requested information at this time. Such a disclosure would constitute a violation of the Privacy Act, 5 U.S.C. § 552a and the FOIA, 5 U.S.C. § 552(b)(6) and (b)(7)(C)."

48. On June 6, 2019, the plaintiff wrote to Siple about both 2019-0759 and 2019-1013, including a DOJ-361 and documentation indicating that the records requested were public records.

49. On May 30, 2019, ATF categorically denied the plaintiff's March 26, 2019 request pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(C).

50. On June 20, 2019, the petitioner appealed the decision of the ATF in 2019-0759 and 2019-1013 and stated that the records should not have been denied to him under the FOIA law.

51. On August 14, 2019, Defendant Chrstina D. Troina, Associate Chief, for Sean O'Neill, Chief, Administrative Appeals Staff, in Appeal no. DOJ-AP-2019-005940, affirmed the decision of the ATF in 2019-1013.

52. On August 22, 2019, Matthew Hurd, Associate Chief, for Sean O'Neill, decided the plaintiff's appeal of request number 2019-0759, in Appeal No. DOJ-AP-

    005936, and remanded the plaintiff's request to ATF for a search for responsive records.

53. On March 11, 2020, the ATF informed the plaintiff that they had processed 1,796 pages of responsive documents, producing 1126 pages and withholding the rest.

54. The 1126 pages disclosed in the initial response were heavily redacted so much to as be useless.

55. On June 29, 2020, a representative from the OCDETF[1] FOIA Office, contacted the plaintiff in response to the March 26, 2019, FOIA request to the ATF and advised that thirty-seven pages were referred to that office by the ATF, and that those pages were being withheld in full stating:

"after review of the referred pages, please be advised that these pages are being withheld in full on behalf of the Executive Office for OCDETF pursuant to Exemption 5 of the FOIA, 5 U.S.C. § -552(b)(5), which pertains· to certain inter- and intra-agency communications protected by the deliberative process privilege; Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6), which pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties; Exemption 7(c) of the FOIA., 5 U.S.C. § 552(b)(7)(c), which pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; Exemption 7(d) of the FOIA, 5 U.S.C. § 552(b)(7)(d), which pertains to records. or information compiled for law enforcement purposes, the release of which ·would disclose the identities of confidential sources; and Exemption 7(e) of the FOIA, 5 U.S.C. § 552(b)(7)(e), which pertains to records or information compiled for la'\1/ enforcement

---

[1] The response identifies OCDETF as the Executive Office for the Organized Crime Drug Enforcement Task Force.

purposes, the release of which would. disclose certain techniques or procedures for law enforcement investigations or prosecutions."

56. The plaintiff appealed from the withholding of the 35 pages by OCDETF.

57. On April 25, 2022, in Appeal No. A-2022-00696 (from Request No. FOIA-OD2021-0067), Daniel Castellano, Associate Chief for Matthew Hurd, remanded the referred records to OCDETF for further processing of the responsive records.

58. On December 28, 2021, the plaintiff filed another appeal of the ATF's actions in providing the 1,124 redacted pages and the withholding of the other pages.

59. On April 22, 2022, Defendant Christina Troiani, responded in Appeal No. A-2022-01050 to the plaintiff's appeal from the redaction and withholding of responsive documents, denying the appeal after concluding that it was untimely and that the ATF had already responded to the request.

Drug Enforcement Administration (DEA)

60. On March 24, 2019, the plaintiff requested, pursuant to FOIA, all reports and materials related to the investigation of the Carolina Boys group in and around Waterbury, Connecticut in the possession of the DEA that started in 2005 or 2006, this was process as request number 19-0048-F.

61. On or around April 25, 2019, Kathryn Myrick, Chief of the Freedom of Information/Privacy Act Unit of the DEA , under Case Number 19-00447-F, denied the plaintiff's March 24, 2019, request for names of all members associated with the Carolina Boys in 2005, citing various provisions of the FOIA/Privacy Act.

62. On April 29, 2019, the plaintiff wrote to the DEA indicating that the records requested were public information and could be sent to his attorney.

63. On June 20, 2019, the plaintiff filed an appeal from the April 25, 2019 denial of his March 24, 2019 request Case Number 19-00447-F.

64. On or around January 14, 2020, the DEA released 9 pages of heavily redacted responsive materials to request number 19-0048-F.

65. The plaintiff appealed from the action of the DEA in response to request number 19-0048-F, and the DEA assigned that appeal as Appeal No. A-2020-00203.

66. On August 16 , 2019, Defendant Matthew Hurd denied the plaintiff's appeal of the denial of Request No. 19-00447-F in Appeal No. DOJ-AP-2019-005955.

67. On May 8, 2020, Defendant Hurd affirmed the actions of the DEA and denied the plaintiff's Appeal No. A-2020-00203.

68. On January 19, 2022, the plaintiff made an additional FOI request to the DEA, which was assigned Case Number 22-00364-F.

69. On March 6, 2022, Defendant Wanda Jones indicated that the plaintiff had made similar FOI requests in the past and there was nothing additional responsive to those requests.

70. Defendant Jones identified request numbers 19-00447-F, 19-00303-P, 19-00448-F, 19-00068-AP, 20-00025-AP, 21-00025-FR as the plaintiff's previous requests for those documents.

Federal Bureau of Investigation.

71. On June 9, 2019, the plaintiff requested "the names of all member[s] associated with the 'Carolina Boys' in (2005); know[n] to the F.B.I. in charge of the investigation of the Carlina Boys in Waterbury Connecticut in 2005-2006.

72. On June 24, 2019, David M. Hardy, Section Chief of the Record/Information Dissemination Section of the Information Management Division of the Federal Bureau of Investigation responded to the plaintiff's June 9, 2019 request, identified as Request No. 1440303-000.

73. The substance of Hardy's June 24, 2019, response was "You have requested records on one or more third party individuals. Please be advised the FBI will neither confirm nor deny the existence of such records pursuant lo FOIA

exemptions (b)(6) and (b)(7)(C), 5 U.S.C. §§ 522 (b)(6) and (b)(7)(C). The mere acknowledgement of the existence of FBI records on third party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy. This is our standard response to such requests and should not be taken to mean that records do, or do not, exist. As a result, your request has been closed. For more information about making requests for records on third party individuals (living or deceased), please see the enclosed FBI Third Party Fact Sheet."

74. On July 8, 2019, the plaintiff filed an appeal from the June 24, 2019, denial of request number 1440303-000, citing the plaintiff's previous receipt of information related to the Carolina Boys from the Waterbury Police Department.

75. On July 31, 2019, the Office of Government Information Services of the National Archives and Records Administration sent a two page letter to the plaintiff, apparently in response to his July 8, 2019 appeal, explaining the justifications for the denial of request number 1440303-000.

76. On August 29, 2019, defendants Christina D. Troiani and Sean O'Neill wrote to the plaintiff denying his appeal from request number 1440303-000.

77. The substance of the denial of the appeal was that "After carefully considering your appeal, I am affirming the FBI's action on your request. The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. The FBI properly refused to confirm or deny the existence of records responsive to your request. Confirming or denying the existence of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of

13

personal privacy. See 5 U.S.C. § 552(b)(6), (7)(C). Additionally, it is reasonably foreseeable that confirming or denying the existence of such records would harm the interests protected by these exemptions. See, e.g .. People for the Ethical Treatment of Animals v. NIH, 745 F.3d 535,544 (D.C. Cir. 2014) (upholding agency's refusal to confirm or deny existence ofrecords that would confirm whether investigation of third party had occurred); see also Antonelli v. FBI, 721 F.2d 615,618 (7th Cir. 1983) (finding that confirming whether third party has been the subject of investigation would likely "constitute an invasion of that person's privacy that implicates the protections of Exemptions 6 and 7")."

78. Also on June 9, 2019, the plaintiff sent a FOI request to the FBI requesting the following "I am requesting all reports and material related to the investigation of the 'Carolina Boys' group in and around Waterbury, Connecticut in the possession of the FBI that started in 2005-2006."

79. On June 26, 2019, David M. Hardy, Section Chief of the Record/Information Dissemination Section of the Information Management Division of the Federal Bureau of Investigation responded to the plaintiff's June 9, 2019 request, identified as Request No. 1440294-000.

80. The substance of Hardy's June 26, 2019, response was "The records you have requested contain material that your correctional institution has categorized as prohibited within its facility; therefore, your request has been closed administratively. Please provide an alternate address, and we will re-open your request for processing."

81. On July 3, 2019, the plaintiff responded to the June 26, 2019, letter and provided the address of his attorney for the disclosure.

82. On October 17, 2019, Hardy wrote the plaintiff a letter stating that Request No. 1440294-000 was being closed because the FBI was unable to identify records responsive to the plaintiff's request.

83. The plaintiff appealed from the action of the FBI regarding Request No. 1440294-001 on March 6, 2020, and the FBI assigned the appeal number A-2020-00390.

84. On August 12, 2020, the plaintiff's appeal number A-2020-00390 was denied "because the FBI responded to [the plaintiff's] request."

E.  The Habeas Petition and the Petition for New Trial

85. In 2015, the plaintiff filed a petition for new trial in Connecticut state court seeking a new trial on the grounds that his due process rights were violated at his criminal trial based upon the false testimony alleging that the plaintiff was a member of the Carolina Boys group, which was docketed as *Julio Burgos Torres v. State of Connecticut et. al.,* UWY-CV16-5017484-S, and later transferred to another district and docketed as *Julio Burgos Torres v. State of Connecticut et. al.,* TTD-CV16-5014664.

86. In *Julio Burgos Torres v. State of Connecticut et. al.,* TTD-CV16-5014664, the plaintiff sought through civil discovery procedures to obtain additional relevant information about the State's knowledge about the plaintiff's membership status with the Carolina Boys group.

87. In October 2021, the plaintiff's petition for new trial was dismissed based upon a determination that the statute of limitations for filing the lawsuit had expired, and most of the plaintiff's discovery requests had remained unanswered and motions to compel the production of such evidence were left unadjudicated.

88. The dismissal of the plaintiff's petition for new trial is currently on appeal in *Julio Burgos Torres v. State of Connecticut et al*, AC 45371.

89. The plaintiff's petition for a writ of habeas corpus, *Julio Burgos-Torres v. Commissioner of Correction,* TSR-CV19-4009818-S*,* is currently pending in the Judicial District of Tolland at Rockville with a scheduled trial date of November 2023.

90. That petition challenges the legality of the petitioner's confinement based upon the due process violation resulting from the false testimony at his trial related to the Carolina Boys.

F. <u>Exhaustive Efforts to Obtain Material Evidence</u>

92. The plaintiff and his counsel have made all efforts to obtain this discovery through other channels.

93. The plaintiff has sought informal discovery from the prosecuting authority in the State of Connecticut.

94. The plaintiff has made requests for this information from state prosecuting and law enforcement authorities.

95. The plaintiff has used the limited discovery rules for habeas petitioners in state court to request the relevant information that might be in the possession of state authorities.

96. These efforts have either been denied, ignored or resulted in minimal responses indicating that such records are not available.

97. The plaintiff, through counsel, has made requests of the United States Government, through the United States Attorney for the District of Connecticut, for voluntary release or provision of the documents relevant to this request.

98. These efforts have been denied or ignored.

**V.    Cause of Action**

99. The allegations made in Paragraphs 1-98 are realleged and incorporated herein by reference.

100. Plaintiff's request for information will contribute substantially and meaningfully to the public's understanding of the activities of the defendants, and to the operation and integrity of the criminal justice system. Furthermore, the public has a substantial interest in the fair administration of justice and the integrity of convictions, both state and federal, since fundamental rights under the federal

16

constitution apply to state criminal trials and convictions. Furthermore, the public has an interest in the accuracy of convictions in homicide cases since the arrest, conviction, and imprisonment of the wrongly accused implicates public safety in that it raises the specter that those responsible for murder are left in the community to potentially further harm the public. Since the plaintiff's request for information will contribute substantially and meaningfully to the plaintiff and plaintiff's counsel's ability to challenge the validity of his state criminal conviction, and the validity of that conviction is of such an important public interest, providing these materials to counsel will contribute substantially and meaningfully to the public's understanding of the integrity of the criminal justice system.

101. The withholding of records by defendants based upon FOIA exemption 5, 5 U.S.C. § 552(b)(5), was unjustified because such records would be available by law to a criminal defendant being prosecuted by the United States government based upon such an investigation.

102. The withholding of records by defendants, based upon the exceptions related to "records or information compiled for law enforcement purposes" under 5 U.S.C. § 552(b)(7), was unjustified because:

   A. records related to a concluded investigation into a defunct organization compiled at least 15 years ago could not reasonably be expected to interfere with enforcement proceedings,

   B. records related to a concluded investigation that already resulted in numerous indictments and convictions more than a decade ago, would not deprive any person of a right to a fair trial or an impartial adjudication, and the withholding of such records would serve to deprive the plaintiff to his rights to a fair trial and/or an impartial adjudication of his constitutional claims;

        C.    disclosure of records from a law enforcement investigation that resulted in highly publicized arrests and prosecutions could not reasonably be expected to constitute an unwarranted invasion of personal privacy, especially where the records could be marked "Attorney Eyes Only" to minimize any such danger,

        D.    records related to a concluded investigation into a defunct organization compiled at least 15 years ago could not reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis,

        E.    records related to a concluded investigation that previously resulted in arrests, prosecutions, and the disclosure of discovery would not disclose techniques and procedures for law enforcement investigations or prosecutions, and would not disclose guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk circumvention of the law, especially where such records could be marked "Attorney Eyes Only" as necessary to minimize any such danger, or,

        F.    records related to a concluded investigation into a defunct organization compiled at least 15 years ago could not reasonably be expected to endanger the life or physical safety of any individual;

103. By upholding the actions of the agency, defendants denied plaintiff his right to access this information required by the Freedom of Information Act.

104. Unless enjoined by this Court, defendant will continue to violate the plaintiff's right to information under the Freedom of Information Act.

105. Plaintiff is entitled to the reasonable costs of litigation, including attorneys' fees, pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E).

**VI.     Relief Requested**

The plaintiff respectfully requests that this Court:

A.     Order defendants to promptly provide the plaintiff with copies of all requested documents that remain at issue in this action.

B.     Declare defendants' refusal and failure to adequately and appropriately respond to plaintiff's FOIA requests and appeals in a timely manner to be unlawful under FOIA.

C.     Award the plaintiff his costs and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E).

D.     Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,
JULIO BURGOS-TORRES
Plaintiff

By _____
Michael W. Brown
Koch, Garg & Brown
8 West Main Street, Suite 2-10
Niantic, CT 06357
Tel (860) 452-6863
Fax (860) 452-6865
Email mike@kgb-law.com
Bar Number #CT30802